UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| MERILEE L.,<br><br>        Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 1:24-cv-00071<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Merilee L.[1] brought this action for judicial review of the denial of her application for disability insurance benefits by the Commissioner of the Social Security Administration.[2]  The administrative law judge (ALJ) who addressed Ms. L.'s application determined she did not qualify as disabled.[3]  Ms. L. argues the ALJ erred by (1) failing to include migraine-related limitations in her residual functional capacity assessment, and (2) failing to consider her eligibility to receive a closed period of disability.[4]  As explained below, substantial evidence supports the ALJ's residual functional capacity determination for the entire relevant time period.  And the ALJ was not required to

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in judicial opinions in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. ("Tr.") 17–33, Doc. No. 9.)

[4] (*See* Opening Br. 2, 10–13, Doc. No. 12.)

separately discuss a closed period of disability.  Accordingly, the Commissioner's decision is affirmed.[5]

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision.  This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8]  Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 6.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation modified).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11]  And

the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

**APPLICABLE LAW**

The Social Security Act defines "disability" as the inability "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment" expected to result in death or last for at least twelve consecutive months.[13]

An individual is considered disabled only if her impairments are so severe, she cannot

perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step

sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful

   activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

---

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. § 423(d)(1)(A).

[14] *Id.* § 423(d)(2)(A).

5) she has the residual functional capacity to perform other work, considering

her age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16]  And at

step five, the Commissioner must show the claimant retains the ability to perform other

work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. L. applied for disability insurance benefits under Title II of the Social Security

Act[18] on August 30, 2021, alleging she became disabled on November 21, 2020.[19]

After an administrative hearing,[20] the ALJ issued a decision in August 2023, denying

benefits.[21]

At step two of the sequential evaluation, the ALJ found Ms. L. had the severe

impairments of migraines, anxiety, and depression.[22]  He concluded Ms. L. also had

---

[15] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] 42 U.S.C. §§ 401–434.

[19] (*See* Tr. 17, 163–68.)

[20] (*See* Tr. 39–62.)

[21] (Tr. 17–33.)

[22] (Tr. 19.)

nonsevere impairments of obstructive sleep apnea and obesity.[23]  According to the ALJ,

Ms. L.'s alleged cognitive impairment was not medically determinable.[24]  At step three,

the ALJ found Ms. L.'s impairments did not meet or medically equal an impairment

listing.[25]

The ALJ then determined Ms. L. had the residual functional capacity to perform

"a full range of work at all exertional levels" but with the following nonexertional

limitations:

> (1) occasional climbing of ladders, ropes or scaffolds, (2) no concentrated
> exposure to extreme heat, vibration, more than moderate noise, or dusts,
> odors, fumes and other pulmonary irritants, and (3) the claimant must avoid
> even moderate exposure to dangerous hazards such as unprotected
> heights or dangerous machinery, and (4) the claimant can understand,
> remember and carry out simple instructions.[26]

At step four, based on this residual functional capacity assessment and the testimony of

a vocational expert, the ALJ found Ms. L. could not perform past work.[27]  But at step

five, based on the expert's testimony, the ALJ found Ms. L. capable of other jobs in the

national economy.[28]  Accordingly, the ALJ found Ms. L. not disabled and denied her

---

[23] (Tr. 20.)

[24] (*Id.*)

[25] (Tr. 20–24.)

[26] (Tr. 24.)

[27] (Tr. 31–32.)

[28] (Tr. 32–33.)

claim.[29]  This decision became final when the Appeals Council denied Ms. L.'s request

for review.[30]

## ANALYSIS

Ms. L. argues the ALJ erred by failing to account for the full effect of her

migraines in determining her residual functional capacity.[31]  She also argues the ALJ

erred by failing to consider whether her headaches were disabling for a "closed period

of disability" before she experienced improvement from medication.[32]

A claimant's residual functional capacity (RFC) reflects the most she can do in a

work setting considering her limitations.[33]  In assessing RFC, the ALJ considers "the

extent to which an individual's medically determinable impairment(s), including any

related symptoms, such as pain, may cause physical or mental limitations or restrictions

that may affect his or her capacity to do work-related physical and mental activities."[34]

The ALJ considers all relevant evidence in the record.[35]

---

[29] (Tr. 33.)

[30] (Tr. 1–3.)

[31] (Opening Br. 4, 10–11, Doc. No. 12.)

[32] (*Id.* at 4, 11–13.)

[33] *See* 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1–2
(July 2, 1996).

[34] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[35] *See* 20 C.F.R. § 404.1545(a)(3).

Ms. L. has demonstrated no error in the ALJ's findings regarding her migraines or their effects on her RFC.  And because substantial evidence supports the ALJ's RFC determination for the entire relevant time period, the ALJ did not err by failing to specifically consider a closed period of disability.

A.  ALJ's Findings

After finding Ms. L.'s migraines were a severe impairment which did not meet a disability listing, the ALJ assessed Ms. L.'s RFC for the relevant time period—from November 21, 2020 (her alleged onset date) through August 23, 2023 (the decision date).[36]  The ALJ summarized Ms. L.'s self-reported symptoms, noting her claims of disability due to migraines, cognitive decline, and depression.[37]  The ALJ acknowledged Ms. L. stopped working in November 2020 because she had "trouble remembering things," she was "becoming frustrated and depressed," and she was "having a lot of migraines."[38]  Ms. L. reported that even with her most recent medication, she still had about four to five migraines per month.[39]  She explained her migraines prevented her from working "not only because of the pain," but also because "her medication [made] her tired and sleepy, and it [took] a while for her medication to kick in."[40]

---

[36] (Tr. 24–31, 33.)

[37] (Tr. 24–25.)

[38] (*Id.*)  The ALJ also recognized Ms. L. missed several days of work due to migraines. (Tr. 25.)

[39] (Tr. 25.)

[40] (*Id.*)  Ms. L. reported it could take up to an hour for the pain and nausea to go away after taking medication, and it made her "sleep[] for several hours."  (*Id.*)

As required, the ALJ applied the agency's two-step analysis in evaluating Ms.

L.'s self-reported symptoms and limitations.[41]  First, the ALJ found Ms. L.'s medically

determinable impairments could reasonably be expected to cause the alleged

symptoms.[42]  But the ALJ found Ms. L.'s "statements concerning the intensity,

persistence and limiting effects of these symptoms [were] not entirely consistent with

the medical evidence and other evidence in the record."[43]  Specifically, the ALJ found

"the medical evidence of record, showing rather well-controlled migraines with ongoing

treatment, fails to corroborate the claimant's alleged disabling allegations."[44]

The ALJ summarized the evidence regarding Ms. L.'s treatment for migraines as

follows.  While "the record confirm[ed] a baseline number of migraines of 15 out of 30

headache days per month" around the November 2020 onset date, Ms. L. "reported

improvement with nortriptyline and rizatriptan."[45]  By March 2021, neurology records

---

[41] *See* SSR 16-3p, 2016 SSR LEXIS 4, at *3–4 (Mar. 16, 2016) ("First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain.  Second, . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ."); *see also* 20 C.F.R. § 404.1529.

[42] (Tr. 25); *see also* SSR 16-3p, 2016 SSR LEXIS 4, at *3; 20 C.F.R. § 404.1529(b).

[43] (Tr. 25); *see also* SSR 16-3p, 2016 SSR LEXIS 4, at *9–10 ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."); 20 C.F.R. § 404.1529(c).

[44] (Tr. 29.)

[45] (Tr. 25.)

showed Ms. L's migraine frequency had reduced to six days per month—although each

migraine lasted two days, with nausea, vomiting, and light sensitivity.[46]  Around that

time, Ms. L. began Botox injections, leading to "further improvement."[47]  Specifically,

"[i]n June 2021, [Ms. L.] reported needing less sumatriptan, her rescue medication, after

her early March Botox injection, with migraines returning only in the last four weeks."[48]

Ms. L. "continued to report improvement after three rounds of Botox injections, in March

2021, June 2021, and August 2021, indicating that her migraines were less frequent

and less severe."[49]

     As the ALJ noted, Ms. L.'s August 2021 physical exam was normal, and her

December 2021 neuropsychological testing showed "minimal deficits overall."[50]  At this

December 2021 exam, Ms. L. also "endorsed independence with activities of daily

living."[51]  The ALJ found this "wholly inconsistent with debilitating mental or physical

deficits from migraines."[52]  In particular, the ALJ relied on Ms. L.'s report of shopping,

cooking, doing chores, driving, playing computer games, reading, and crocheting (while

---

[46] (*Id.*)

[47] (Tr. 26.)

[48] (*Id.*)

[49] (*Id.*)

[50] (*Id.*)

[51] (*Id.*)

[52] (*Id.*)

noting she lacked motivation to groom or bathe).[53]  Ms. L. also set her bills to autopay

and managed her own medication using phone reminders.[54]

In February 2022, Ms. L. "continued to complain of 15 headache days, even with

Botox."[55]  She began taking a new medication, Ajovy, and by June 2022, she reported

"'80%' decreased 'manageable' migraines with Ajovy, without side effects."[56]  Ms. L.'s

counsel argued she would still be "prohibitively off task and/or absent from work,"

because an 80% reduction meant she was still having "three breakthrough migraines a

month, along with several days of post-headache increased depression and tiredness

due to medication side effects."[57]  But the ALJ found the medical evidence "did not

support the extent of these proposed limitations."[58]  The ALJ observed "little to no

evidence of any ongoing treatment for migraines in June 2022 and July 2022, including

neurology or primary care follow-ups, nor emergency room visits or admissions for

intractable symptoms."[59]  And while Ms. L. attended biweekly mental health therapy

from August 2022 to July 2023, the records were "devoid of ongoing indication of

---

[53] (*Id.*)

[54] (*Id.*)

[55] (*Id.*)

[56] (Tr. 26–27.)

[57] (Tr. 27.)

[58] (*Id.*)

[59] (*Id.*)

debilitating migraine headaches, at the frequency argued by [Ms. L.'s] representative."[60]

The ALJ noted a lack of records showing Ms. L. arrived at therapy sessions with a

migraine, terminated sessions due to symptoms, or gave any indication she was

nauseous, vomiting, or sensitive to light or noise—despite claiming she experienced

three migraines per month during this period, with symptoms persisting for several

days.[61]  Finally, the ALJ referred to a July 2023 neurology follow-up indicating Ms. L.'s

migraines were "rather well-controlled with Ajovy after a year."[62]

Based on this evidence, the ALJ found Ms. L. capable of performing a full range

of work at all exertional levels, with certain nonexertional limitations to accommodate

her migraines and mental impairments.  The ALJ included the following limitations due

to Ms. L.'s migraines: "occasional climbing of ladders, ropes, or scaffolds; no

concentrated exposure to extreme heat, vibration, more than moderate noise, or dusts,

odors, fumes, and other pulmonary irritants;" and avoiding "even moderate exposure to

dangerous hazards such as unprotected heights or dangerous machinery."[63]  The ALJ

also limited Ms. L. to understanding, remembering, and carrying out simple instructions

due to her mental impairments.[64]

---

[60] (*Id.*)

[61] (*Id.*)

[62] (Tr. 28.)

[63] (Tr. 29.)

[64] (*Id.*)

B.  Migraine-Related Limitations

Ms. L. first argues the ALJ erred by including "none of the primary limitations

related to her headaches" in the RFC assessment—specifically, her "need to be off

task, resting, for several hours" during "a headache event."[65]  Ms. L. contends the ALJ

merely found a reduction in her baseline migraine frequency.[66]  She argues "nothing in

the ALJ's explanation even claims" or "demonstrates" she does not still have "the 4 to 5

headaches per month described in her testimony."[67]  And Ms. L. asserts the ALJ's "own

findings do not support his conclusion that migraines never affect [her] ability to work."[68]

The ALJ expressly considered and rejected Ms. L.'s allegations regarding the

frequency of her migraines, and substantial evidence supports his finding.  At the outset

of the RFC analysis, the ALJ acknowledged Ms. L.'s testimony that she experienced

four to five migraines per month but found her statements "not entirely consistent with

the medical evidence and other evidence."[69]  The ALJ found Ms. L.'s migraines

"well-controlled," noting she reported improvement with Botox beginning in March 2021

and with Ajovy after February 2022.[70]  The ALJ then specifically found Ms. L.'s claim of

continuing to experience three breakthrough migraines per month (after reporting an

---

[65] (Opening Br. 10, Doc. No. 12.)

[66] (*Id.*)

[67] (*Id.* at 10–11.)

[68] (*Id.* at 10.)

[69] (Tr. 25.)

[70] (Tr. 25–27.)

eighty percent reduction in frequency in June 2022) inconsistent with the medical evidence.[71]  In support of this finding, the ALJ relied on Ms. L.'s biweekly therapy records during the following year, noting she was never observed with migraine symptoms, she did not terminate any sessions due to symptoms, and the records were "devoid of any ongoing indication of debilitating migraine headaches."[72]  The ALJ also pointed to the lack of neurology or primary care follow-ups or emergency room visits for migraine symptoms in June and July 2022.[73]

The cited records support the ALJ's conclusion that Ms. L.'s migraines were well-controlled and not as frequent as she alleged.  And Ms. L. fails to identify any contrary evidence in the record, apart from her own hearing testimony.  The ALJ reasonably concluded the absence of observed migraine symptoms during biweekly therapy, along with the absence of other migraine-related treatment records around this time, was inconsistent with Ms. L.'s report of three or more migraines per month (with symptoms lasting for days).  This constitutes substantial evidence supporting the ALJ's finding that Ms. L.'s migraines were not as frequent as alleged.

In view of this supported finding, the ALJ did not err in omitting RFC limitations relating to being off task or absent from work.  And based on this same evidence, the ALJ expressly rejected Ms. L.'s counsel's argument that such limitations should be

---

[71] (Tr. 27, 29.)

[72] (Tr. 27–29 (citing Tr. 467–539).)

[73] (Tr. 27.)

included due to breakthrough migraines.[74]  Moreover, contrary to Ms. L.'s argument, the

ALJ included other migraine-related limitations in the RFC, such as limiting Ms. L.'s

exposure to heat, vibration, noise, and other irritants.[75]  Substantial evidence supports

the ALJ's determinations that these limitations adequately accommodated Ms. L.'s

migraines and that the record did not support additional limitations.

### C. Closed Period of Disability

Ms. L. next argues the ALJ erred by failing to consider whether she suffered a

"closed period of disability" before experiencing improvement with medications.[76]  She

contends that even if her migraines improved by the time of the ALJ's decision, the ALJ

"concede[d] that she used to have a significantly larger number of" migraines.[77]  Ms. L.

argues the ALJ was required to evaluate whether she qualified as disabled for any

twelve-month period, even if she was no longer disabled at the time of the decision.[78]

"In a 'closed period' case, the decision maker determines that a new applicant for

disability benefits was disabled for a finite period of time which started and stopped prior

to the date of his decision."[79]  A claimant may be entitled to a closed period of disability

"if the evidence shows he or she was disabled or blind for a continuous period of not

---

[74] (Tr. 27, 29.)

[75] (Tr. 29.)

[76] (Opening Br. 11–13, Doc. No. 12.)

[77] (*Id.* at 11 (emphasis omitted).)

[78] (*Id.* at 11–13.)

[79] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 n.2 (10th Cir. 1999) (citation omitted).

less than 12 months, but based on the evidence is no longer disabled or blind at the time of adjudication."[80]

Ms. L. has demonstrated no error here. As noted, the ALJ expressly found Ms. L. was not disabled during the entire relevant period: from November 21, 2020 (the alleged onset date) though August 23, 2023 (the date of the decision).[81] The ALJ evaluated and discussed record evidence from the entire relevant period throughout his decision, including in the RFC analysis.[82] In other words, the ALJ's findings, including his RFC determination, apply to the entire relevant period. Ms. L. does not identify any particular twelve-month period the ALJ failed to address. Under these circumstances, the ALJ was not required to separately discuss a closed period of disability.[83]

To the extent Ms. L. suggests the ALJ should have found Ms. L. disabled for some closed period before she reported an eighty percent improvement with Ajovy in

---

[80] Program Operations Manual System (POMS) § DI 25510.001(B), available at https://secure.ssa.gov/poms.nsf/lnx/0425510001 [https://perma.cc/7E2L-RNEK].

[81] (Tr. 33.)

[82] (*See* Tr. 24–31.)

[83] *See Powell v. Kijakazi*, No. 21-443, 2022 U.S. Dist. LEXIS 130771, at *35–36 (D.N.M. July 22, 2022) (unpublished) (The ALJ's "conclusion that Plaintiff was not disabled during [the relevant] time period indicates that she was not entitled to closed period of disability during any period of time therein."); *Asberry v. Kijakazi*, No. CIV-21-396, 2022 U.S. Dist. LEXIS 83287, at *29 (W.D. Okla. May 9, 2022) (unpublished) ("Implicit in the ALJ's conclusion that Plaintiff was not disabled during the relevant time period is that Plaintiff was not entitled to a closed period of disability at any time during that same period."); *Herndon v. Colvin*, No. 14-CV-743, 2016 U.S. Dist. LEXIS 23686, at *4–5 (N.D. Okla. Feb. 26, 2016) (unpublished) (rejecting the argument that an ALJ failed to consider a closed period where "the decision demonstrates the ALJ considered the evidence throughout that time frame").

June 2022, this argument fails.  Substantial evidence supports the ALJ's RFC findings

for the period before this reported improvement.  As the ALJ noted, Botox began

improving Ms. L.'s symptoms only four months after the alleged onset date.[84]

Specifically, the ALJ cited Ms. L.'s June 2021 report that, following her early March

Botox injection, her migraines had returned only in the prior four weeks.[85]  The ALJ also

found the activities of daily living Ms. L. reported in December 2021 (thirteen months

after the alleged onset date, and before she began Ajovy) "wholly inconsistent with

debilitating mental or physical deficits from migraines."[86]  In other words, the ALJ's

finding that Ms. L.'s migraines were not as frequent or limiting as alleged is supported

by medical records showing improvement from Botox only four months after the alleged

onset date, as well as Ms. L.'s daily activities before she began treatment with Ajovy.

This evidence constitutes substantial evidence supporting the ALJ's finding that Ms. L.

was not disabled—even before she reported an eighty percent improvement in June

2022.

Where the ALJ found Ms. L. not disabled during the entire relevant period, and

substantial evidence supports his findings, Ms. L. has demonstrated no error in the

ALJ's failure to separately discuss a closed period of disability.[87]

---

[84] (Tr. 26.)

[85] (*Id.* (citing Tr. 332–33, 336.)

[86] (*Id.* (citing Tr. 356–364).)

[87] *See Hays v. Kijakazi*, No. CIV-21-448, 2022 U.S. Dist. LEXIS 148914, at *13 (W.D. Okla. Aug. 19, 2022) (unpublished) (rejecting an argument that the ALJ erred in failing to

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 29th day of September, 2025.

BY THE COURT:

*Daphne A. Oberg*

Daphne A. Oberg
United States Magistrate Judge

---

consider a closed period disability where substantial evidence supported the ALJ's RFC finding during the entire relevant period); *Lopez v. Colvin*, No. 13-cv-00136, 2014 U.S. Dist. LEXIS 36151, at \*26 (D. Colo. Mar. 18, 2014) (unpublished) ("Because I have found no infirmity in the ALJ's determination that plaintiff was not disabled during the relevant time period, this argument [that the ALJ should have considered a closed period of disability] implodes.").